UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THOMAS RUTH,

*Plaintiff*,

– against –

CITY OF NEW YORK, *et al.*,

*Defendants*.

**MEMORANDUM & ORDER**
26-cv-02937 (NCM) (PCG)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Thomas Ruth, proceeding *pro se,* filed the instant action on May 15, 2026. *See* Compl., ECF No. 1. On May 20, 2026, plaintiff filed an amended complaint. *See* Am. Compl. ("AC"), ECF No. 8. Plaintiff has also filed a Motion for Leave to Proceed *in forma pauperis*, ECF No. 2; two Motions to Appoint Counsel, ECF Nos. 4, 13; a Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 6; a Motion for the Court to Appoint Expert Witnesses under Fed. R. Evid. 706, ECF No. 7; and a Motion for Leave to Electronically File a Document under Seal, ECF No. 13. Plaintiff's request to proceed *in forma pauperis* is granted for the limited purpose of this Order. For the reasons stated below, the action is dismissed with leave to file an amended complaint within 30 days.

## BACKGROUND

Plaintiff's factual allegations and legal arguments are difficult to follow; however, it appears he intends to raise a civil RICO claim and a disability discrimination claim related to (1) housing conditions, and (2) proceedings in the Supreme Court of the State

of New York, Kings County. The following facts are taken from plaintiff's Amended Complaint, plaintiff's initial Complaint, and other documents plaintiff has filed with the Court.

## I. Housing-Related Allegations

Plaintiff's initial Complaint asserts that defendants Proper Real Estate, LLC and Artur Stolarczyk "leased an illegal cellar unit" at 340 McGuinness Boulevard. Compl. 10.[1] Plaintiff states that "landlord partner" defendant Andrej Nowak "participated in the seizure of tenant property and forced abandonment protocols into asbestos-exposed rooms." Compl. 10. Plaintiff resided at this property "for many years prior to displacement" and was "expos[ed] to hazardous environmental conditions including mold, fire residue, pesticide applications, and unsafe structural conditions." AC 9. Plaintiff does not identify a specific incident or event, but plaintiff's reference to "fire residue," AC 9, and claims that defendants were "framing [p]laintiff as a fire starter," Compl. 10, suggest that a particular incident may have changed or exacerbated the conditions in the unit.

Plaintiff sues several New York City and New York State government agencies that address housing conditions. *See* Compl. 1; AC 1. Plaintiff states that he filed multiple complaints about certain state and local agencies with the United States Environmental Protection Agency ("EPA"). Compl. 8. Plaintiff includes a January 26, 2026, letter from the EPA's Office of Civil Rights and Adjudication acknowledging receipt of five complaints filed by plaintiff with the EPA. Compl. 9. The letter does not include any findings but merely explains that the agency would review the complaints "for acceptance, rejection,

[1] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

or referral to the appropriate federal agency." Compl. 9.

Plaintiff mentions New York City's Office of Administrative Trials and Hearings ("OATH"), but he does not specify the process that led to the involvement of this tribunal. He references an OATH Environmental Control Board "Violation Summary . . . certifying the total structural illegality of the constructed cellar space" at 340 McGuinness Boulevard. Compl. 15. He claims that Defendant Charles McMullen, Esq., whom plaintiff identifies as public enforcement counsel for the New York City Department of Buildings, "concealed hazardous asbestos and heavy metal exposure records" and suppressed "dangerous toxic habitat, fire safety, and asbestos exposure logs." Compl. 4, 8. Plaintiff claims that McMullen "caused the electronic truncation and selective non-disclosure of critical environmental contamination logs, asbestos exposure certifications, and structural fire safety briefs within the public OATH/ECB database portals." Compl. 11. Plaintiff asserts that McMullen's actions "strip[ped] him of triable personal injury assets and equal access to the courts." Compl. 8.

## II. State Court Proceedings

### *a. Allegedly Fraudulent Litigation Conduct*

Plaintiff also alleges "fraudulent litigation conduct" in state court proceedings. AC 5, 7. He states: "The ongoing internet indexing of Kings County Supreme Court Index No. 511232/2022 (specifically New York State Courts Electronic Filing system ("NYSCEF") Document Nos. 32 and 34) . . . spreads a fraudulent, landlord-manufactured 'fire starter' tenant-blacklisting profile across the internet without [plaintiff's] consent." Compl. at 16. The publicly available database for the New York State courts includes a tort claim, *Ruth*

*v. Proper Real Estate, LLC, et al.*, Index No. 511232/2022.[2]

Plaintiff asserts that unnamed defendants created a "sophisticated 'clerk matrix' scheme involving electronic document splicing, [and] notarial forgery"; "manufactur[ed] a fraudulent, un-notarized 'corridor stipulation' dated March 30, 2023"; and "introduc[ed] fake Queens County notary imprints dated February 27, 2023" into NYSCEF. Compl. at 4, 6. He alleges that Defendants James Maleady, Esq. and Paul Sabaj, Esq. "introduced forged, back-dated, and spliced notary certificates" into the record. Compl. at 10. He also claims that court clerks, Defendants Tamara Broadus and Steve Ferguson,[3] "validate[d] forged submissions." Compl. at 10. Plaintiff provides a list of exhibits that mentions a "Certified True Copy of Kings County Clerk Electronic Filing, NYSCEF Doc. No. 32," but he does not attach this document or any other exhibits. Compl. at 14. His May 20, 2026, Motion also mentions "supporting exhibits" that are not attached. Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 6 at 3.

Plaintiff claims that the uploading of alleged "spliced documents" in NYSCEF Doc. No. 32 and No. 34 constitutes wire fraud and extortion, because it "induce[d] economic fear and force[d] the abandonment of personal injury assets." Compl. at 8, 10–11. He also asserts that Defendants' "explicit purpose of this combined wire fraud execution was to trick presiding judicial officers into dismissing Plaintiff's active brain injury and toxic tort

---

[2] https://iapps.courts.state.ny.us/webcivil/FCASSearch (last visited 5/28/26). Defendant Artur Stolarczyk was also a defendant in that case. Defendants David J. Hernandez and Jeremy E. Stephens served as plaintiff's attorneys. Defendant Paul Thomas Sabaj was counsel for defendants in that case. The parties reached a settlement that was signed by plaintiff and posted on the docket on June 2, 2023.

[3] Plaintiff's original complaint included claims against a third clerk, Mark Ferguson; however, Mark Ferguson was removed from the list of defendants in plaintiff's Amended Complaint and has accordingly been terminated from the case. AC 1.

claims." Compl. at 11. His initial complaint claims $300,000 as "[t]he baseline asset value of [his] toxic tort and neurocognitive claims." Compl. 12. Plaintiff alleges that, collectively, defendants' actions created an "enterprise structure" that "unit[ed] private operators, defense counsel, and corrupted court personnel into an ongoing organizational core with a shared unlawful purpose." Compl. at 10–11. He asserts that these actions subject defendants to liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. § 1961-1968. Compl. at 3, 4, 10–11.

### ***b. State Court's Alleged Failure to Accommodate***

Plaintiff also claims that the state court violated his rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Compl. 3, 4. Plaintiff represents that he is "a disabled, vulnerable individual who suffers from a documented Traumatic Brain Injury (TBI) and severe, chronic Post-Traumatic Stress Disorder (PTSD)[.]" Compl. at 4. He asserts that the state court's "electronic filing (e-filing) mechanisms lack[ed] the structural safety filters required to protect a disabled *pro se* victim from predatory document splicing," allowing "adverse parties [to] continuously manipulate records without [plaintiff's] immediate cognitive awareness." Compl. at 4. Plaintiff claims that Defendant Charles A. Small, Esq., whom plaintiff identifies as the Chief Clerk and ADA Coordinator for the Kings County Supreme Court, "refus[ed] to implement structural safety filters to prevent record manipulation targeting disabled litigants." Compl. at 10. Plaintiff does not specify the "reasonable accommodation" that he requested from the state court. However, in his demand for relief, plaintiff requests that the state court create a new "accommodation intake protocol" consisting of "a specialized intake filter to flag, protect, and track pro se litigants who file certified medical evidence of traumatic brain injury or severe PTSD" and "a mandatory, physical, in-person

Court Clerk (CC) electronic monitoring review before the document is formally approved or released into the public dockets." Compl. at 11–12.

### III. Claims for Relief

Plaintiff demands declaratory, injunctive, and monetary relief. He seeks "[d]eclaratory relief regarding [his] federal and state rights." AC at 5. His original complaint requests monetary damages of $1,845,000. Compl. at 3, 8, 12. In his amended pleading, plaintiff raises his monetary demand to $123,177,000, including $15 million for "Toxic Exposure / Medical Monitoring" and "$10 million for "Housing / Reputational Harm." AC at 11, 15.

Plaintiff also asks this Court to enjoin the Kings County Supreme Court to issue a "Take-Down Order against Defendants Trellis Research, Inc. and Nicole Clark." Compl. at 16. He seeks a restraining order "to halt a continuous daily violation of [his] consumer rights under New York General Business Law § 349." Compl. at 17. He does not assert any basis for this Court's subject matter jurisdiction over the Kings County Supreme Court.

He requests that the state court implement a new protocol requiring "an in-person Court Clerk (CC) monitored review system for every e-filed document in [his] cases." Compl. at 6, 11-12. He specifically requests that defendant Tamara Broadus be assigned to this role "for a mandated 3-year term." Compl. at 6, 12.

Plaintiff's May 20, 2026, Emergency Motions for a Temporary Restraining Order and Preliminary Injunction seek "emergency relief to prevent ongoing and irreparable harm arising from alleged environmental exposure, dissemination of allegedly inaccurate public records, disability-related harms, housing instability, and continuing reputational injury," and "preservation of relevant electronic filing records, metadata, public-record publications, and related evidence pending adjudication of this matter." ECF No. 6 at 2.

Plaintiff further requests that the Court appoint "neutral court-appointed experts concerning the environmental, medical, toxicological, neurological, and housing-related issues presented in this action." Notice of Emergency Request for Appointment of Court-Appointed Experts, ECF No. 7. He also requests *pro bono* counsel. Compl. at 3–5; Motion to Appoint Counsel, ECF No. 4.

**LEGAL STANDARD**

Courts are required to give special consideration to *pro se* litigants, those individuals who are not attorneys and are representing themselves in court. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In giving *pro se* complaints special consideration, the Court must look for the strongest arguments in the complaint. *Id.*; *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191–93 (2d Cir. 2008). If the Court finds any possibility that "a valid claim might be stated," the Court must give the plaintiff an opportunity to amend the complaint. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).

A federal statute, 28 U.S.C. § 1915(e)(2), allows poor plaintiffs to file lawsuits without paying the usual filing fee. This statute requires a district court to dismiss a case filed *in forma pauperis* if the court determines that the action: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to provide "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). To avoid dismissal, a complaint must include facts that show that the defendants may be responsible for the harm to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not enough to say that the

defendant harmed me; the claim must include factual details that, if they are true, would show that the defendant broke the law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

### I. Plaintiff fails to allege a viable RICO Claim.

Plaintiff alleges that an "enterprise structure" united defendants in an unspecified "shared unlawful purpose" involving "extortion" and "wire fraud," making them liable under a Civil RICO claim. Compl. 10–11. RICO, codified at 18 U.S.C. § 1961–1968, applies to persons who use a pattern of racketeering activities in an enterprise engaged in or affecting interstate commerce. 18 U.S.C. § 1962. The statute defines "racketeering activity" as an act or threat involving one of the serious crimes listed in the statute and requires a "pattern" consisting of two or more predicate acts of "racketeering activity." 18 U.S.C. § 1961(1), (4), (5).

Extortion, mail fraud, and wire fraud are all RICO predicate acts. *Lefkowitz v. Reissman*, No. 12-cv-08703, 2014 WL 925410, at *6 (S.D.N.Y. Mar. 7, 2014) (citing 18 U.S.C. § 1956(c)(7)). Under federal law, "'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Mail and wire fraud occur when a person "having devised or intending to devise any scheme or artifice to defraud," uses the Post Office or wires, respectively, to execute or attempt to execute that scheme. 18 U.S.C. § 1341. *See also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008); 18 U.S.C. § 1343.

In alleging a mail or wire fraud claim, "a plaintiff must provide proof of a material misrepresentation" made by the defendants. *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). Rule 9(b) of the Federal Rules of Civil Procedure further requires

allegations related to that misrepresentation be pled with particularity. Fed. R. Civ. P. 9(b). That means that "[t]he complaint must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 889 F.3d at 124.

Here, plaintiff has not identified the individuals, communications, and purpose or substance of any allegedly fraudulent statements related to the submission, suppression, and manipulation of court documents within the OATH and Kings County Court databases. *See Newman v. Jewish Agency for Israel*, No. 16-CV-7593, 2017 WL 6628616, at *5 (S.D.N.Y. Dec. 28, 2017) (dismissing civil RICO claim because mail fraud claims did not meet the higher pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure), *aff'd sub nom. Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019). Thus, plaintiff's mail and wire fraud allegations fail because his conclusory statements do not allege fraud with particularity.

With respect to extortion, plaintiff claims that the defendants "induc[ed] economic fear and forc[ed] the abandonment of personal injury assets." Compl. 11. Reading plaintiff's complaint liberally, it appears that he is claiming that the litigation activities of filing unspecified "spliced documents" caused him to abandon his personal injury claims and the hoped-for economic payout should his claims have proved successful. Yet he has not alleged that defendants obtained any of his property. *See Corsini*, 2025 WL 2781345, at *8 (dismissing Civil RICO claim based on allegations of extortion under state law because plaintiffs had not alleged that defendants obtained their money or property, let alone through wrongful means). And "[t]hreats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion." *Avangrid Networks, Inc. v. Sec. Limits, Inc.*, No. 22-cv-09622, 2026 WL

504735, at *5 (S.D.N.Y. Feb. 23, 2026) (internal quotation marks and citation omitted). Thus, plaintiff has failed to plead extortion as well.

For those reasons, plaintiff's purported RICO claims are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Plaintiff also fails to allege a viable ADA claim.

Plaintiff asserts that clerks at the Kings County Supreme Court violated Title II of the ADA, by failing to provide reasonable accommodations for his "documented Traumatic Brain Injury (TBI) and severe, chronic Post-Traumatic Stress Disorder (PTSD)." Compl. at 6–7.

Title II provides in relevant part that: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Discrimination under the ADA occurs when defendants fail to make "'reasonable accommodations' that permit [qualified individuals with a disability] to have access to and take a meaningful part in public services." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004). The requested accommodations must be reasonable, and the ADA does not require that a disabled person be provided with every accommodation he requests. For example, "Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities. . . . It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Tennessee v. Lane*, 541 U.S. 509, 531–32 (2004).

Even assuming for the purposes of this Order that plaintiff is a qualified individual with a disability, he still pleads no plausible facts to suggest that he was denied participation in the state court proceedings due to his disability. He suggests that disabled individuals with "cognitive processing impairments" have difficulty in navigating litigation. Compl. at 4. He vaguely alleges that the state court defendants "targeted and weaponized [his] cognitive vulnerabilities" by "splicing" and "manipulation of" documents filed on the record. Compl. at 6. But he has not alleged that he cannot access the documents filed on the relevant dockets due to his disability or that the state court has prevented him from responding to them or otherwise prevented him from accessing the courts. *See* Compl. 6 (noting only that his disability means that his adversaries can file fraudulent documents "without [his] immediate cognitive awareness"). Accordingly, it is not clear to the Court how plaintiff's access to the state court proceedings has been impaired compared to other litigants due to his disability.

Further, even if the alleged "document splicing" had somehow deprived plaintiff of access to the state court proceedings because of his disability, the accommodation he seeks is not reasonable. Plaintiff claims that current state court electronic filing procedures "lack the structural safety filters required to protect a disabled *pro se* victim from predatory document splicing" and that the Chief Clerk and ADA Coordinator for the Kings County Supreme Court, "refus[ed] to implement structural filing safety filters to prevent record manipulation targeting disabled litigants." Compl. at 6, 10. He does not indicate the specific accommodation that he requested from the state court to "implement structural filing safety filters." Compl. at 10. But he now asks this Court to order that the state court provide an "in-person Court Clerk" to review all electronically filed documents before they are posted to the public docket. Compl. 12.

That requested accommodation would fundamentally alter multiple third parties' access to the state court's dockets, because it would essentially disable *any* party to a lawsuit in which plaintiff is involved from filing documents through the court's normal electronic filing processes. In other words, it would negatively affect third parties' access to the courts. Given that enforcing access to the courts is one of the acknowledged aims of Title II, *see Lane*, 541 U.S. at 531, an accommodation that would have that result is not reasonable. Accordingly, plaintiff's claims under the ADA are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## III. Plaintiff's state law claims must be dismissed as well.

"[The Second Circuit] and the Supreme Court have held that when the federal claims [in a case] are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998). Accordingly, to the extent plaintiff seeks to pursue state law claims, like negligence, fraud, or other tort claims arising from the same facts as his RICO and ADA claims, those claims are dismissed along with the federal ones.

## CONCLUSION

For the foregoing reasons, all of plaintiff's claims are dismissed without prejudice pursuant to Fed. 28 U.S.C. § 1915(e)(2)(B). In light of plaintiff's *pro se* status, the Court grants thirty (30) days to file an amended complaint. If plaintiff fails to amend the complaint within 30 days, or otherwise show good cause for his failure, judgment shall be entered dismissing the action.

Because plaintiff's claims are dismissed, his motions to appoint counsel, ECF Nos. 4, 13; for a temporary restraining order and preliminary injunction, ECF No. 6; to appoint expert witnesses, ECF No. 7; and to file medical records under seal, ECF No. 13, are denied as moot.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully requested to mail a copy of this Order to plaintiff.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated: August 28, 2026
Brooklyn, New York